IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) <br> ) |
| v. | )    Civil Action No. 3:22cr71–HEH |
| | ) |
| AARON MITCHELL JOHNSON, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
**(Denying Defendant's Motion to Suppress Evidence)**

This matter is before the Court on Defendant Aaron Johnson's ("Defendant") Motion to Suppress. (Mot., ECF No. 14.) Defendant has moved to suppress the evidence obtained by officers during their warrantless search of Defendant's car on September 23, 2021, and any evidence obtained as the result of Defendant's subsequent seizure, including a firearm seized from Defendant's person, and an extended magazine seized from the vehicle. He contends that this evidence was obtained in violation of the Fourth Amendment because the plain view doctrine did not create an exception for the warrantless search. (*Id.* at 6.) Both Defendant and the United States have filed memoranda supporting their respective positions, the Court heard evidence and oral argument on July 12, 2022, and the parties filed supplemental briefs in support of their positions. For the reasons that follow, and those stated on the record, the Court will deny Defendant's Motion to Suppress.

## I. BACKGROUND

Based on the testimony and evidence submitted at the hearing, the relevant facts are as follows. At the time of the incident in question, Officers Sinclair and Carroll (collectively, "Officers") of the Richmond Police Department had been on the force for almost two years. During the first year, they did office work and attended the police academy and training. Thereafter, both Officers began patrolling in the east end of Richmond and had been on patrol for 12 months prior to September 2021. Despite that relatively short period of time, both Officers testified that they had made arrests for numerous weapons violations, drugs, homicides, and other violent crimes, and had garnered experience in the field.

On September 23, 2021, Officers Sinclair and Carroll stopped to conduct a merchant check at Murry's Food ("Murry's") located at 1907 Mechanicsville Turnpike, Richmond, Virginia 23223. Murry's is in a high crime area and both Officers were familiar with conducting merchant checks at this particular location. The Officers had previously recovered firearms and drugs while conducting merchant checks at Murry's. That evening, after exiting Murry's, the Officers saw a white vehicle in the parking lot with two men inside of it. Officer Sinclair recognized Lamar Williams ("Williams"), the passenger in the vehicle, because he had been incarcerated in the prison where Officer Sinclair had previously worked. Williams was wearing a black shoulder-strap bag while in the vehicle, however he did not have the bag when he exited the vehicle to go into Murry's.

When Williams exited Murry's, Officer Sinclair approached him, and they had a casual, consensual conversation about how Williams has been doing since he was released from incarceration. The conversation took place next to the passenger side of the white vehicle. Officer Carroll was standing near the vehicle and Defendant, who was sitting in the driver's seat, began participating in the conversation through the open passenger window. Williams noticed a woman walking into Murry's and joked with the Officers and Defendant that he was going to go "get with her." Williams walked back towards Murry's.

At this time, the Officers turned their attention to Defendant. Officer Sinclair walked closer to the vehicle and asked Defendant if there were any guns in the vehicle. At this point, Officer Sinclair had not shined his flashlight into the vehicle, but he looked directly down into the passenger side door area through the window. Defendant responded, "hell no," and Officer Sinclair continued looking down into the passenger side door panel. A few seconds later, Officer Carroll shined his flashlight into the passenger side window and Defendant said, "go ahead now go ahead" and signaled for the Officers to leave. Officer Carroll said, "what you got underneath that . . . " and abruptly stopped his question. Right after Officer Carroll stopped his question, Officer Sinclair shined his flashlight into the passenger side of the vehicle, eventually putting his flashlight through the slightly opened passenger side window. Upon doing this, Officer Sinclair asked, "what's in that lottery ticket." Meanwhile, Officer Carroll continued shining his flashlight around and into the vehicle and then audibly said "oop" and proceeded around to the driver's side of the vehicle.

3

Officer Sinclair testified that when he was peering down into the passenger side door area and asking Defendant if there were weapons in the car, he saw a cut straw with residue and a folded lottery ticket in the door panel[1] of the passenger side door. While Officer Carroll walked around to the driver's side door, Officer Sinclair opened the passenger side door to secure the evidence and removed the keys from the vehicle. The Officers demanded that Defendant step out of the vehicle and, when he refused, Officer Carroll and another Officer who had arrived on scene attempted to get him out through the driver's side door. When they opened the door, they noticed an extended magazine on the floor of the driver's side and the resulting arrest and search occurred. During the search, Officers recovered a handgun from Defendant's front pocket.

## II. ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "As a general rule, warrantless searches or seizures are per se unreasonable." *United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010). However, there are a few well established exceptions to this per se rule. *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). "One such exception is that 'under certain circumstances the police may seize evidence in plain view without a warrant.'" *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)).

---

[1] Government's Exhibit 1 is a photo of the cut straw and lottery ticket that shows where they were located. The objects were in the passenger side door handle, or "door pull," near the window controls. Officer Sinclair described it as the "ashtray" in the side of the door. (Tr. at 17:17–21, ECF No. 18.) The Court will refer to the area as the door panel.

4

Seeing an object that is already in plain view typically does not amount to an invasion of privacy and, thus, does not constitute a Fourth Amendment search. *United States v. Runner*, No. 21-4085, 2022 WL 3146862, at *3 (4th Cir. Aug. 8, 2022) (quoting *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997)). However, "[n]ot everything in plain view . . . may be seized—only those items that are perceived to be contraband, stolen property, or incriminating in character." *Id.* (citing *Horton v. California*, 496 U.S. 128, 136 (1990)). Thus, for the plain view doctrine to apply and permit a warrantless seizure, three requirements must be met: (1) the officer must lawfully be in a place from which he can plainly view the object; (2) "the officer has a lawful right of access to the object itself;" and (3) the incriminating nature of the object must be "immediately apparent." *Jackson*, 131 F.3d at 1109.

As to the lawful vantage point and lawful right of access factors, the United States Supreme Court has stated "[t]here is no legitimate expectation of privacy . . . shielding the portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983) (internal citations omitted). Further, using a flashlight to illuminate the interior of a person's vehicle "trenche[s] upon no right secured . . . by the Fourth Amendment." *Id.*; *see United States v. Wiley*, 673 F. Supp. 1405, 1407 (E.D. Va. 1987). In his Motion, Defendant argues that Officers Sinclair and Carroll did not observe the contraband from a lawful vantage point *outside* of the vehicle. (Def.'s Suppl. Br. at 3–4, ECF No. 19.) Rather, Defendant alleges that Officer Sinclair did not view the contraband until he stuck his flashlight through the partially opened passenger side window. (*Id.*)

5

Specifically, Defendant points to *United States v. Jones*, in which the Court stated that "an officer's momentary reaching into the interior of a vehicle did constitute a search." 565 U.S. 400, 410 (2012); (Def.'s Suppl. Br. at 7–8.) Defendant is correct that when an officer crosses the threshold of the vehicle in this manner it becomes a search. *Jones*, 565 U.S. at 410. However, as long as the officer views the contraband from *outside* of the vehicle, the plain view doctrine exception could apply, and the ensuing search is permissible. *Brown*, 460 U.S. at 740. Here Government's Exhibits 6, 6a, and 6b show that Officer Sinclair viewed something in the passenger side door panel of the car *before* putting his flashlight through the window. Although it is not clear from the body camera footage exactly what Officer Sinclair saw at this time, he testified that this was the moment he saw "the cut straw with the residue inside that [he] believed to be narcotic residue" and the folded lottery ticket. (Tr. at 17:12.) It was only after Officer Sinclair saw the contraband that he put his flashlight through the passenger window to "confirm" what he saw. At that point, Officer Sinclair already suspected that the objects were contraband based on his observation of the objects and his experience as a law enforcement officer.

Defendant also argues that "[a] lottery ticket and a straw are commonplace items, and their incriminating character is not immediately apparent." (Def.'s Suppl. Br. at 4.) The United States Court of Appeals for the Fourth Circuit has reiterated the Supreme Court's finding that "the use of the phrase immediately apparent was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of

6

certainty as to the incriminatory character of evidence is necessary for an application of the plain view doctrine." *Runner*, 2022 WL 3146862, at *3 (internal quotations omitted).

Defendant seems to misunderstand the import that courts have given to the term "immediately apparent." It does not require an officer to *know* that the evidence in plain view is incriminating, but rather the officer must have probable cause that the evidence is incriminating. *Brown*, 460 U.S. at 741–42; *Payton v. New York*, 445 U.S. 573, 587 (1980). Thus, courts have found that a plain view doctrine search is presumptively reasonable as long as there is probable cause that the object is associated with criminal activity. *Runner*, 2022 WL 3146862, at *3; *Brown*, 460 U.S. at 738. In the case of plain view, probable cause simply "requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . . it does not demand any showing that such a belief be correct or more likely true than false." *Brown*, 460 U.S. at 742 (internal quotation omitted); *Runner*, 2022 WL 3146862, at *3. Further, an officer's experience and training can be used to determine the incriminating nature of an object in plain view. *United States v. Cortez*, 449 U.S. 411, 418–19 (1981); *Wiley*, 673 F. Supp. at 1408.

Before entering Defendant's vehicle, Officer Sinclair had probable cause that the objects he saw in the passenger side door panel were associated with criminal activity. The body camera footage shows Officer Sinclair's eyes locking in on something in the passenger side door panel after he asks Defendant "you got any guns in there" and as Defendant responded "hell no." (Gov't's Ex. 6.) Officer Sinclair testified that at that time, he saw a cut straw with residue on it and a folded lottery ticket. (Tr. at 17:12.) He

7

further testified that in his experience as a patrolling law enforcement officer, he conducted numerous narcotics investigations and he would regularly see specific types of lottery tickets ripped and folded in certain ways to hold narcotics.[2] (*Id.* at 9:1–20.) He stated that these specific lottery tickets would be used to package narcotics for hand-to-hand transfers. (*Id.* 10:5–20.) Additionally, Officer Sinclair stated that they often see drug users use "a small piece of, like, a McDonald's straw that will have been cut . . . to ingest it up their nose." (*Id.* 11:11–16.) Thus, everything that Officer Sinclair saw in the passenger side door panel indicated to him that it was contraband and provided probable cause to search Defendant's car.

Finally, Defendant argues that, while the encounter may have started as consensual, it became a seizure as soon as the Officers ignored Defendant's directive to "go ahead now" and placed their flashlights into Defendant's vehicle. (Def.'s Suppl. Br. at 8.) Specifically, Defendant states that once the Officers began shining their flashlights inside the vehicle and Officer Carroll began walking to the driver's side, Defendant was not free to leave. (*Id.*) As stated above, there is no expectation of privacy in those portions of a vehicle that are visible from the outside. *See Brown*, 460 U.S. at 740. Even if the interaction became a search and seizure once Officer Sinclair put his flashlight through the window, he had already seen the cut straw with residue and the folded lottery ticket. Officer Sinclair saw those objects and had probable cause to believe

---

[2] Defendant points out that Officer Sinclair had only been patrolling for 12 months when this incident occurred. (Def.'s Suppl. Br. at 5.) Regardless, Officers Sinclair and Carroll testified that they patrolled a high crime area and regularly responded to calls for various criminal offenses including numerous narcotics investigations. (Tr. at 8:4–13; 86:11–16.)

8

they were associated with criminal activity before Defendant told him to "go ahead now." (Gov't's Ex. 6.) Defendant was free to leave any time before this, but he chose to stay and participate in the conversation with Mr. Williams and the Officers.

Regardless, once Officer Sinclair saw the cut straw with residue on it and the folded lottery ticket, he had a reasonable articulable suspicion of criminal activity and was able to conduct a brief investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); (Gov't's Suppl. Resp. at 11, ECF No. 20.) A *Terry* stop may occur when a police officer's "observations lead him to suspect that a particular person has committed or is about to commit a crime" and allows an officer "to detain the person briefly in order to 'investigate the circumstances that provoke suspicion.'" *United States v. Johnson*, 599 F.3d 339, 345 (4th Cir. 2010) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). A *Terry* stop is reasonable under the Fourth Amendment if there is "a reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Reasonable suspicion is a less demanding standard than probable cause but requires at least a minimal level of objective justification for the search. In assessing whether reasonable suspicion existed, "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. Relevant factors include "the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013). Finally, the connection between drugs and guns makes the

9

presence of drugs or drug paraphernalia a significant factor in creating reasonable suspicion. *See United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998) ("The indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer."). A "reasonable suspicion that [a] vehicle contain[s] controlled substances" allows "officers to remove the occupants and conduct a pat-down of each for weapons." *United States v. Coe*, 490 F. App'x 544, 546 (4th Cir. 2012).

As the Court has discussed at length, Officer Sinclair saw objects that indicated criminal narcotics activity. Based on his experience in the field and past narcotics investigations he had conducted, he understood the small, cut straw with residue, as well as the folded lottery ticket, to be indicative of drug distribution and use. Thus, Officer Sinclair had a reasonable suspicion that the vehicle contained controlled substances and the Officers were justified in opening the car door, removing Defendant from the vehicle, patting Defendant down, and searching the vehicle.

For the foregoing reasons, the Court finds that the Officers' actions, as challenged, were reasonable under the Fourth Amendment. Accordingly, Defendant's Motion to Suppress will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 19, 2022
Richmond, VA